UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 12-20088-CIV-GOODMAN

[CONSENT CASE]

JONATHAN JAMES DINGMAN,

    Plaintiff,

v.

CART SHIELD USA, LLC d/b/a GREEN
SECURE SOLUTIONS, MAX ALEV
OZGERCIN,

    Defendants.
_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Defendants Cart Shield USA, LLC and Max Alev Ozgercin (collectively "Cart Shield") move for summary judgment against former employee Plaintiff Jonathan James Dingman ("Dingman") on his one-count unpaid overtime Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA") lawsuit. [ECF Nos. 1; 28]. Cart Shield argues that it is entitled to summary judgment because Dingman is **exempt** from the FLSA's overtime provisions under the Motor Carrier Act ("MCA") exemption. 29 U.S.C. § 213(b)(1). [ECF No. 28, p. 6]. Notwithstanding this claimed exemption, Cart Shield also contends that it paid Dingman all the overtime pay to which he is entitled and that Dingman admitted

as much. [ECF No. 28, p. 5]. Dingman filed his own motion for partial summary judgment, arguing that he is not exempt under the MCA exemption. [ECF No. 33].

After examining the parties' submissions and giving the non-moving parties every favorable inference, the Court finds that the record is too murky to support an entry of summary judgment for *any* party. Therefore, the Court **denies** both summary judgment motions.

I.  BACKGROUND

Cart Shield sanitizes shopping carts for grocery stores throughout the southeastern United States. [ECF Nos. 28, p. 3, ¶¶ 22-24; 32, p. 3, ¶¶ 22-24]. Two Cart Shield employees drive a truck with an attached trailer to grocery stores in different states to sanitize shopping carts. [*Id.*].[1] Cart Shield's trucks and trailers are registered with the Department of Transportation and are subject to its regulations, as promulgated by the Secretary of Transportation (the "Secretary"). [ECF Nos. 28, pp. 3-4, ¶¶ 25-26, 30; 32-1, p. 2, ¶¶ 25-26, 30].

Cart Shield employed Dingman for approximately four months in late 2011. [ECF Nos. 28, p. 3, ¶ 1; 32, p. 1, ¶ 1]. Dingman would travel with the truck driver to grocery stores to sanitize shopping carts. [ECF Nos. 28, p. 3, ¶ 24; 32, p. 3, ¶ 24]. As best as the Court can make out, Dingman was a mechanic or driver's helper who performed

---

[1] Significantly, it is unclear if the attached trailer is *itself* the actual shopping cart machine sanitizer or if the machine is a separate piece of equipment which is *on* the trailer like cargo.

maintenance and service work on the truck and trailer (including the shopping cart machine sanitizer).[2] [ECF No. 21-1, p. 1, ¶¶ 3-4].

But what maintenance and service work Dingman actually performed is unclear. The *only* maintenance and service work discussed in the record is that Dingman made sure "the blinkers and brake lights were operational." [ECF No. 32-1, p. 2, ¶ 29]. The record, however, is clear that Dingman spent 9-10 hours/week or 2-3 hours/day doing maintenance and service work. [ECF No. 37-1, pp. 1:19-25, 2:9-25].[3]

---

[2]     In his affidavit in support of his opposition to Cart Shield's summary judgment motion, Dingman claimed that he did *no* maintenance or service work on the **truck**, but, rather, that he did this work only on the trailer. [ECF No. 32-1, p. 2, ¶ 18]. However, in his responses to interrogatories and in his deposition, Dingman stated: "I was the mechanic of the truck"; "I had to service my vehicle and trailer"; and "sometimes there would be truck problems and they have to be fixed . . . [and] I have to fix it." [ECF Nos. 32-1, p. 1, ¶¶ 3-4; 37-1, p. 1:1-13]. Thus, notwithstanding his affidavit, Dingman's earlier testimony establishes that Dingman performed maintenance and service work of some type on *both* the truck and trailer. The Court disregards this portion of Dingman's affidavit that, without explanation, contradicts his prior sworn statements. *Van T. Junkins and Assoc., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984) ("When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.").

[3]     In his affidavit in support of his opposition to Cart Shield's summary judgment motion, Dingman claimed that he spent no more than 10% of his day doing maintenance or service work. [ECF No. 32-1, p. 2, ¶ 32]. However, in his deposition, Dingman stated that he spent 9-10 hours/week or 2-3 hours/day doing such work – well over 10% of his day. [ECF No. 37-1, pp. 1:19-25, 2:9-25]. The Court again disregards this portion of Dingman's affidavit that, without explanation, contradicts his prior sworn statements. *See infra* n. 2; *Van T. Junkins and Assoc., Inc.*, 736 F.2d at 657.

However, as discussed below, the Court does not know how much of Dingman's time was spent on maintenance, how much was spent on service, whether the maintenance and service work related to the **safety** of the operation of the truck and trailer, and whether any of the work was to service or repair the shopping cart machine sanitizer (assuming it is a machine *on* the trailer, as opposed to being the trailer itself).

II.    DISCUSSION

    A.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate when the pleadings, depositions, affidavits and exhibits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen*, 121 F.3d at 646.

On a motion for summary judgment, the court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party and determine whether the evidence could reasonably sustain a jury verdict for the non-movant. *Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. Thus, if "conflicts arise between the facts evidenced by the parties, we [must] credit the nonmoving party's

version*.*" *Feliciano v. City of Miami Beach*, No. 12-11397, 2013 WL 425445, at *2 (11th Cir. Feb. 5, 2013) (emphasis in original) (internal citations and quotations omitted).

### B. The Overtime Claim And Dingman's Purported Admission

The FLSA requires employers to pay non-exempt employees time-and-a-half for any hours worked in excess of 40 hours per week. 29 U.S.C. § 207(a)(1). Dingman alleges that Cart Shield violated the FLSA because it failed to pay him the extra half-time for any weekly hours worked above 40. [*See* ECF No. 1].

Cart Shield argues that Dingman's allegation is based on his misunderstanding of how he was to be paid and confusion over his paystubs. [ECF No. 28, p. 5; 28-1, ¶¶ 3-5]. According to Cart Shield, once its counsel cleared up this misunderstanding with Dingman at his deposition, Dingman admitted that he was paid in full and could not identify any unpaid compensation he was due. [ECF No. 28, p. 5]. Thus, Cart Shield argues that it is entitled to summary judgment and requests sanctions because Dingman's counsel has continued to pursue this case despite Dingman's admission that he has no claim. [*Id.* at pp. 6-7].

In response, Dingman argues that the actual misunderstanding took place in his deposition and that he was not paid the extra half-time. [ECF Nos. 31, pp. 6-7; 32-1, ¶¶ 8-9, 15]. Dingman also raised, for the first time, the argument that he was not paid for travel time. [ECF Nos. 31, p. 6; 32-1, ¶ 8].

After examining the portions of Dingman's deposition that are in the record [ECF No. 37-1, pp. 3-7], the Court finds that Dingman did state that he was owed no extra half-time and that he could not identify any other compensation that he was owed. [ECF No. 37-1; pp. 4:9-12; 5:6-11; 6:19-7:4]. The problem for Cart Shield is that it did not attach the portion of the deposition where its counsel purportedly cleared-up the misunderstanding to Dingman. Nor did it attach Dingman's paystubs for the Court to review. Thus, the Court cannot determine under what factual scenario Dingman admitted that he has no claim, or, if he in fact has no claim. Accordingly, because the Court must credit Dingman's version of the events — that the misunderstanding *arose* in his deposition (as opposed to being eliminated in the deposition) — the Court denies Cart Shield's motion for summary judgment on this basis.[4]

C. **The MCA Exemption**

As an alternative basis for summary judgment, Cart Shield argues that Dingman is exempt from the FLSA overtime provisions because he was a mechanic or driver's helper. [ECF Nos. 35, pp. 2-3; 37, pp. 7-8]. Dingman argues that he is entitled to summary judgment on this issue because: (1) he was the mechanic or driver's helper for the trailer, not the truck; or (2) even if he was a mechanic or driver's helper for the

---

[4] Cart Shield's request for sanctions in its motion for summary judgment is procedurally improper. If Cart Shield wishes to pursue sanctions, then it should file a separate motion and follow the appropriate procedural rules. *See, e.g.*, Local Rule 7.1; Fed. R. Civ. P. 11.

6

truck, his work duties relating to the safety of the truck were *de minimis*. [ECF Nos. 31, pp. 3-4; 36, pp. 2-7]. In other words, Dingman says he is not exempt.

1. *Legal Standards*

a. The MCA Exemption Generally

The FLSA overtime provisions do not apply to any employee "to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b)(1). The Secretary is deemed to have such power,[5] thereby triggering the exemption, if:

> (1) the employee is employed by a carrier "whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act"; and
>
> (2) the employee "engage[s] in activities of a character directly affecting the **safety of operation** of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act."

*Mena v. McArthur Dairy, LLC*, 352 F. App'x 303, 305-06 (11th Cir. 2009) (quoting 29 C.F.R. § 782.2(a)) (emphasis added).

Only certain classes of workers have generally been deemed to affect safety: drivers; driver's helpers; loaders; and mechanics. 29 C.F.R. § 782.2(b)(1) (citing *Pyramid*

---

[5] "[T]he Secretary of Transportation need not actually exercise his power to regulate under the Motor Carrier Act; an exemption under section 13(b)(1) is created so long as the Secretary has the *authority* to regulate over a particular category of employees." *Spires v. Ben Hill Cnty.*, 980 F.2d 683, 686 (11th Cir. 1993) (emphasis added).

*Motor Freight Corp. v. Ispass*, 330 U.S. 695 (1947)). "In determining whether an employee falls within such an exempt category, neither the name given to his position nor that given to the work that he does is controlling; what is controlling is the character of the activities involved in the performance of his job." 29 C.F.R. § 782.2(b)(2) (internal citations omitted).

Exemptions to the FLSA are construed narrowly and against the employer. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1156 (11th Cir. 2008). The employer has the burden to establish its entitlement to an FLSA exemption. *Id.*

### b. The MCA Mechanic Exemption

For the MCA mechanic's exemption to apply, the mechanic must actually perform "inspection, adjustment, repair or maintenance work on the motor vehicles themselves (including trucks, tractors and trailers, and buses) and [must be], when so engaged, directly responsible for creating or maintaining physical conditions essential to the safety of the vehicles on the highways." 29 C.F.R. § 782.6(a).

However, not all of a mechanic's work directly affects safety. The following work has been held as directly affecting safety:

> [t]he inspection, repair, adjustment, and maintenance for safe operation of steering apparatus, lights, brakes, horns, windshield wipers, wheels and axles, bushings, transmissions, differentials, motors, starters and ignition, carburetors, fifth wheels, springs and spring hangers, frames, and gasoline tanks . . . [i]nspecting and checking air pressure in tires, changing tires, and repairing and rebuilding tires for immediate replacement on the vehicle

8

> from which they were removed . . . hooking up tractors and trailers, including light and brake connections, and the inspection of such hookups.

*Id.* (internal citations omitted). The following activities, however, are deemed to *not* directly affect safety: filling radiators; checking batteries; painting the vehicle; putting oil and gas in the vehicle; washing the vehicle; and the "usual work of . . . garage employees performing menial nondiscretionary tasks or disassembling work." 29 C.F.R. § 782.6(c)(1).

The exemption applies even if the employee-mechanic performs some tasks that directly affect safety and others that do not, unless the safety-affecting duties are *de minimis*. 29 C.F.R. § 782.2(b)(3).

### c.  The MCA Driver's Helper Exemption

The MCA driver's helper exemption applies to an employee, other than a driver, who is required to ride on a vehicle when in interstate commerce. 29 C.F.R. § 782.4. The exemption is intended to cover "those who accompanied the driver on over-the-road trips and helped to relieve the driver, to place flares, to change tires, etc." *Opelika Royal Crown Bottling Co. v. Goldberg*, 299 F.2d 37, 43 (5th Cir. 1962).

### 2. *Analysis*

Cart Shield satisfies the first prong of the MCA exemption because it is a motor carrier subject to the Secretary's jurisdiction under the MCA. [ECF Nos. 28, pp. 3-4, ¶¶ 25-26, 30; 32-1, p. 2, ¶¶ 25-26, 30]. Whether Cart Shield satisfies the second prong of the

9

MCA exemption depends on whether Dingman was a mechanic or driver's helper whose duties directly affected safety and the safety-affecting duties were not a *de minimis* part of his work.

### a. The Alleged Trailer Versus Truck Distinction

Dingman argues that he is entitled to summary judgment because there is a legal difference as to whether he performed safety work on the trailer or the truck. [ECF Nos. 31, pp. 3-4; 33, pp. 3-6]. Dingman's argument appears to be two-fold. First, Dingman argues that a trailer hitched to a truck is not considered part of the truck under the MCA. Therefore, Dingman asserts that his work on the trailer did not affect the safety of the truck and, thus, he does not fall within the exemption. [*Id.*]. Dingman's second argument is that he performed maintenance and service work only on the shopping cart machine sanitizer, not the truck and trailer, and, thus, his work did not directly affect the safety of the truck's operation. [*Id.*].

Dingman's first argument is meritless. First, Dingman has admitted that Cart Shield's trucks, including the trailer, fall under the MCA. [ECF Nos. 28, p. 3, ¶¶ 25-26; 32-1, p. 2, ¶¶ 25-26]. Dingman cannot now assert that this is not the case. Second, courts that have considered this exact issue have found that, as a matter of law, a trailer hitched to a truck is considered **part of the truck**. *Glanville v. Dupar, Inc.*, No. H-08-2537, 2009 WL 3255292 (S.D. Tex. Sept. 25, 2009) (finding that trailer hitched to pickup truck to transport appliances was part of truck in determining whether MCA exemption

10

applied); *Garza v. Smith Intern., Inc.*, No. C-10-100, 2011 WL 835820, at *3-4 (S.D. Tex. Mar. 7, 2011). In addition, the regulation relating to the MCA mechanic exemption specifically includes a mechanic's work on trailers. 29 C.F.R. § 782.6(a) ("mechanics perform work of this character where they actually do inspection, adjustment, repair or maintenance work on the motor vehicles themselves (including trucks, tractors and **trailers,** and buses))." (emphasis added). Thus, Dingman's first argument fails.

The following hypothetical best illustrates Dingman's second argument: A company sells used refrigerators in interstate commerce. The refrigerators are put in semi-trailers that are hitched to trucks. The company's trucks (including the semi-trailers) are regulated by the Secretary under the MCA. Two company employees, a truck driver and a mechanic, take the refrigerators from state to state to sell them. If the mechanic services **only** the refrigerators to make sure they function properly, and not the semi-trailer or the truck, does his work affect the safety of the truck (and semi-trailer) for purposes of the MCA mechanic's exemption (ignoring other FLSA exemptions)?

Dingman's second argument is that the answer is "no." While an intriguing legal issue, the Court cannot decide the issue because the facts of the hypothetical are not the facts of this case and might not be sufficiently similar (but the record is too hazy to know for certain).

First, it is unclear as to whether the shopping cart machine sanitizer is separate from the trailer or if it **is** the trailer. Thus, unlike in our refrigerator hypothetical, there may very well be no difference between servicing the shopping cart machine sanitizer and servicing the trailer. But, then again, there very well might be a significant difference if the sanitizer is a separate piece of equipment placed on the trailer. Second, unlike our refrigerator mechanic, who worked *only* on the refrigerators, Dingman has admitted to performing maintenance and service work on the truck, trailer, *and* the shopping cart machine sanitizer. [ECF Nos. 31, pp. 3-4; 32-1, p. 1, ¶¶ 3-4; 33, pp. 3-6; 37-1, p. 1:1-13]. As a result, Dingman's second argument fails because the facts here do not support his argument that he worked only on the shopping cart machine sanitizer.

### b.  The Mechanic or Driver's Helper MCA Exemption

In order to determine whether an employee is exempt, a court must examine the actual activities the employee performed and the time spent performing those activities. 29 C.F.R. §§ 782.2(b)(2)-(3). Here, the record is unclear as to *both* of these issues.

Regarding the mechanic exemption, Dingman was a "mechanic" who performed 9-10 hours/week or 2-3 hours/day of maintenance and service work on the truck, trailer, and the shopping cart machine sanitizer. [ECF No. 37-1, pp. 1:19-25, 2:9-25]. However, the record does not set out in detail what "maintenance and service work" Dingman actually did and how much time he spent doing so. As a result, the Court cannot determine whether Dingman's mechanic work directly affected safety or not. The only

activity the Court can find in the record was that Dingman ensured that the brake and blinker lights were working. [ECF No. 32-1, p. 2, ¶ 29]. To be sure, this type of work does directly affect safety, 29 C.F.R. § 782.6(a), but it is not clear how much time Dingman spent checking the brake and blinker lights. Therefore, based on the sparse record before it and giving every inference to the non-moving party, the Court cannot determine whether Dingman's mechanic work directly affected safety or whether the time spent on his safety-affecting work was *de minimis*. *Lloyd v. Hi-Ridge Transport*, 396 F. Supp.2d 1290, 1297-98 (M.D. Ala. 2005).

The Court's inquiry as to the driver's helper exemption fares no better. While Dingman was required to ride on Cart Shield's truck [ECF Nos. 28, p. 3, ¶ 24; 32-1, p. 2, ¶ 24], there is nothing in the record that explains what, if anything, he did to assist the driver so as to qualify as a driver's helper. *Opelika Royal Crown Bottling Co.*, 299 F.2d at 43 (driver's helpers are "those who accompan[y] the driver on over-the-road trips and help[] to relieve the driver, to place flares, to change tires, etc."); 29 C.F.R. § 782.4. Accordingly, the Court cannot determine if Dingman was a driver's helper for purposes of evaluating the MCA exemption.

D. **Dingman's Attempt to Amend His Complaint on Summary Judgment**

In his response in opposition to Cart Shield's summary judgment motion, Dingman asserted, for the first time, that he was not paid for **travel time**. [ECF No. 31, pp. 6-7]. However, in his complaint, Dingman did not allege that he was not paid for

travel time. [*See generally* ECF No. 1]. Dingman may not assert a new claim in his arguments opposing summary judgment. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.") (internal citations omitted); *accord Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, No. 11-13275, 2013 WL 673156, at *4-5 (11th Cir. Feb. 26, 2013). Accordingly, the Court will not consider Dingman's new claim and will not allow Dingman to present evidence of unpaid travel time at trial.

### III. CONCLUSION

For the reasons set forth above, the Court **denies** Dingman and Cart Shield's cross-motions for summary judgment.

**DONE AND ORDERED** in Chambers, in Miami, Florida, March 12, 2013.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
All Counsel of Record